# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRYL NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-266-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Darryl Keith Nelson requests judicial review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 13, 1963 and was forty-three years old at the time of the administrative hearing. He has twelve years of education (although it is not clear from the record whether he graduated high school) and served in the National Guard from 1982 to 1988 (Tr. 27). The claimant has worked as a fork lift operator and overhead crane operator (Tr. 17), but alleges that he has been unable to work since April 15, 2001, because of a back injury, numbness throughout his body, and an injured wrist (Tr. 104).

## Procedural History

The claimant applied on November 16, 2005 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Charles Headrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated August 14, 2007. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the physical ability to perform the full range of medium work, *i. e.*, he

could lift/carry 25 pounds frequently and 50 pounds occasionally, and stand/walk/sit for six hours in an eight-hour workday (Tr. 13). The ALJ concluded that while the claimant could not return to his past work, he was not disabled because there was work he could perform in the regional and national economies, *e. g.*, hand packager, cook's helper, fast food worker, poultry processor, order clerk, and ticket counter clerk (Tr. 18).

## Review

The claimant contends the ALJ erred: (i) by failing to give proper weight to the opinions of his treating physician Dr. David Trow, M.D.; and, (ii) by improperly "picking and choosing" among the medical evidence, *i. e.*, discussing evidence that supported his finding of non-disability but ignoring evidence that supported a contrary conclusion. The Court finds that the ALJ *did* fail to properly consider medical evidence in the case, and the decision of the Commissioner must therefore be reversed.

The claimant's medical records reveal that in 2000, he presented at the Muskogee Regional Medical Center and was diagnosed with an acute lumbar strain (Tr. 192). It was noted that in 1998, the claimant had an epidural in his lower back (Tr. 190), and that in February 2001, the claimant was involved in an altercation with police which resulted in a neck injury that required him to wear a soft neck collar and caused episodes of dizziness (Tr. 181). The claimant continued to complain of issues related to this altercation, most notably involving dizziness and passing out (Tr. 177). On April 24, 2001, the claimant was involved in a motor vehicle accident, which apparently impacted

his neck, back, and eye (Tr. 171). The claimant was prescribed pain medication to treat his chronic neck and back pain (Tr. 166).

Most of claimant's medical evidence comes from the Northeastern Oklahoma Community Health Centers (NEOCHC) in Tahlequah, Oklahoma, where he began receiving treatment in January 2005 from a physician's assistant (Tr. 196). Upon initial examination, the claimant complained of back pain from the neck down to the lumbar spine and sharp pain in his heels (Tr. 196). He was found to have a decreased range of motion in his back, and decreased straight leg raise on the left side (Tr. 196).

In May 2006, the claimant presented to Dr. Michael Hammond of the NEOCHC complaining again of lower back pain (Tr. 232). Dr. Hammond noted negative heel to toe walking and a decreased range of motion (Tr. 232). In May, Dr. Hammond referred the claimant to a neurosurgeon and made a notation to "see MRI report", although none was located in the record (Tr. 234); a disability exam noted by Dr. Hammond in August 2006 was also apparently not included in the record (Tr. 228).

The claimant first saw Dr. Trow at NEOCHC on February 28, 2007, complaining of numbness and weakness in the upper extremities, stiffness in his neck and back, and decreased range of motion in his back (Tr. 242). Dr. Trow noted decreased grip strength in the claimant's right hand and tenderness in his neck at C6-7 and in his lumbar spine at L4-5 (Tr. 243). An MRI performed on March 21, 2007 indicated cervical neuropathy, cervical spondylosis at C4-5 and C5-6, mild broad-based discal bulging at C6-7, and mild spurring posterolaterally on the right side at C6-7 (Tr. 241). On April 25, 2007, Dr. Trow

observed that the claimant had decreased sensation in his plantar right foot and decreased ankle reflex (Tr. 239). At that time, Dr. Trow completed a medical source statement, opining that the claimant could sit for two hours in an eight-hour workday, stand for one hour and walk for one hour (Tr. 246). Dr. Trow also opined that the claimant could lift and carry up to ten pounds occasionally, but not engage in simple grasping or fine manipulation of the hands (Tr. 246).

Medical opinions from the claimant's treating physician are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If for any reason a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing *all of the factors* set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527, 416.927]."), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the

area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). These factors are also applied to medical opinions from non-treating physicians. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ failed to say explicitly whether or not he found Dr. Trow to be a treating physician, *see Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source."), but he found that Dr. Trow's examinations were an insufficient "longitudinal relationship with the claimant required to adequately assess the claimant's functional abilities" (Tr. 16). The ALJ also found that Dr. Trow's opinions as to the claimant's functional limitations were "inconsistent with other substantial evidence in the case record" (Tr. 16), but he did not specify the inconsistent evidence to which he was referring. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his

reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are."). But assuming these were legitimate reasons for refusing to give Dr. Trow's opinions controlling weight, the ALJ should have proceeded to determine the proper weight to give those opinions by applying all of the factors in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. The ALJ should also have done this for agency physician Dr. James A. Wright, M.D., who opined after reviewing the medical records that the claimant could perform medium work with no limitations (Tr. 226). But despite essentially adopting this opinion as the claimant's RFC, the ALJ did little more than mention it, *i. e.*, he wholly failed to analyze it in accordance with the standards discussed above or even say what weight he was giving it. Nor did the ALJ explain why he favored it over the opinions expressed by Dr. Trow. *See Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."), *citing* 20 C.F.R. §§ 404.1527(d)(1)- (2), 416.927(1)-(2); Soc. Sec. Rul. 96-6p.

Because the ALJ failed to properly evaluate medical evidence, the decision of the Commissioner must be reversed and the case remanded for further analysis by the ALJ. On remand, the ALJ should properly evaluate the opinions from Dr. Trow and Dr. Wright (and any other physicians whose opinions appear in the medical record). If such analysis results in any modifications to the claimant's RFC, the ALJ should then re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**